## MORGAN v. MORGAN.

1. AN EXCEPTION to a mere clerical error in a decree, apparent upon inspection, from which appellant could receive no possible harm, will be overruled as harmless error.

2. DECREE—MINOR—SERVICE.—A decree made in a cause to which a minor was a proper party, based on a bill in equity, filed in 1868 by the executor, who was also general guardian of the minor, and which required an accounting of the executor, who accepted service for his ward, does not bind such minor.

3. PRACTICE—APPEARANCE—GUARDIAN AND WARD.—Under the old equity practice in this State, that Court never sanctioned the appearance of a general guardian for his ward in a proceeding in which his interests were antagonistic to those of his ward.

4. ACTION—SERVICE.—An action is commenced when process is lodged with the sheriff for *bona fide* service upon the parties.

5. IBID.—CODE, 121.—Under sec. 121 of Civil Code, when a cause of action accrues against a resident of this State, and he subsequently removes therefrom, and remains continuously absent for one year or more, the time of his absence shall not be deemed a part of the time limited for the commencement of such action.

6. DECREE—ENROLLING—ACT OF 1840, SEC. 23, 11 Stat., pp. 116, 117, requiring decrees in equity to be enrolled, applies only to third persons, and a decree in equity not enrolled is binding upon a party to the action.

7. DECREE.—A decree in equity, confirming a master's report, which fixed a debt at a sum certain, is a decree in favor of such creditor for that amount.

8. JUDGMENT.—A party permitting a case to be marked "Ended" on the calendar, does not thereby lose his right to have the decree revived by proper proceedings.

Before WITHERSPOON, J., Greenville, April, 1895.    Modified.

Action for partition by Julius N. Morgan against John W. Morgan, William Morgan, Francis M. Morgan, Alice Morgan, Namie C. Morgan, and Abraham Cook and W. T. Glenn, as administrators of the estate of Jeremiah Glenn. From the Circuit decree all parties appeal, except defendant, John W. Morgan. The plaintiff and all of the defendants, except John W. Morgan, and the administrators of Glenn, appeal, upon the following exceptions:

1. That his Honor erred in his statement and findings of fact that the report of the clerk on claims established was confirmed January 22, 1869; whereas he should have found that such report was confirmed on the 6th day of December, 1870.

2. That his Honor erred in his findings of fact that there was due by the estate of Nathaniel Morgan, deceaeed, to the estate of Jeremiah Glenn, deceased, the sum of $1,865.64, with interest from January 5, 1871; whereas he should have held as a matter of law and fact that the said debt was presumed paid.

3. That his Honor erred in his conclusion of law, that the filing of the petition by the defendants, as administrators of Jeremiah Glenn, deceased, and the service of such petition and the rule to show cause upon all the heirs of Nathaniel Morgan, deceased, except John W. Morgan, within twenty years from December 6th, 1870, was sufficient to arrest the currency of time from which the debt established by Jeremiah Glenn would be presumed paid as to all of the heirs of Nathaniel Morgan, except John W. Morgan; whereas he should have held that the service of such petition and the rule did not arrest as to any of such heirs the currency to such time.

4. That his Honor erred in not holding that the case of *John W. Morgan, ex'or*, v. *Linnie N. Morgan*, had been terminated on December 6th, 1870, and was, therefore, on March 1st, 1888, and thereafter, no longer a pending action. And that, consequently, no petition could be made in such cause on said March 1st, 1888, for further relief.

5. That his Honor erred in not holding that even if such action could have been regarded as pending, the said Abraham Cook and W. T. Glenn, as administrators of Jeremiah Glenn, deceased, were not parties to such action, and were not made so by proper process of law, after notice to the parties to said action and by order of Court. And that, consequently, until thus made parties, they could not call upon the appellants to answer said petition, even if the same could be regarded as a supplemental complaint.

6. That his Honor erred in not holding that such petition was an attempted proceeding to revive a judgment, which it was assumed by petitioners had been procured against the estate of Nathaniel Morgan by Jeremiah Glenn.

7. That his Honor erred in not holding that no such judgment had ever been procured by the said Jeremiah Glenn for the deficiency remaining on his debt after the application of the payment thereon; and that consequently any effort to revive any judgment assumed to have been procured was inoperative.

8. That his Honor erred in not holding that even if the debt of Jeremiah Glenn be held to have been reduced to judgment, that such judgment must be of date December 6th, 1870, the date on which the report on debts was confirmed. And that consequently, in accordance with the statute relative thereto, the proceeding to revive must have been taken within two years after December 24th, 1885, and that this was not done.

9. That his Honor erred in not holding that the petition entitled "a petition to enroll decree and issue execution" is not the proper process to revive the judgment obtained by Jeremiah Glenn, if it be held that such judgment was ob-

tained, and that such process was by summons, as required by law.

10. That his Honor erred in not holding that the injunction made against the creditors of Nathaniel Morgan in the case of John W. Morgan, ex'or, *v.* Linnie N. Morgan *et al.*, was an injunction *pendente lite*, and, therefore, terminated with said suit; and that consequently such injunction did not prevent the said Jeremiah Glenn from proceeding against the estate of Nathaniel Morgan subsequent to such termination in a court of law, for the deficiency remaining of his debt, nor did it prevent such proceedings being secured in said equity cause, prior to its termination.

11. That his Honor erred in not finding as matter of law and fact, that at the time of the institution of the present action, in which it is sought to establish the debt of Jeremiah Glenn, more than twenty years had elapsed since there was any payment on such debt, and that there had been in such time no written acknowledgment thereof, no revival of any judgment secured thereon. And that consequently the said debt must be presumed paid.

12. That his Honor erred in decreeing that the proceeds of sale of the land sought to be partitioned in said action, should be applied, after the payment of taxes, first, to the payment of the costs relative to the said proceedings to revive; second, to the costs of this proceedings; and, third, after deduction of the interest of John W. Morgan, to the payment of the debt of Jeremiah Glenn, deceased; whereas he should have decreed that said proceeds of sale, after payment of taxes, should be applied, first, to the costs of this action, and then the balance divided among the heirs of Nathaniel Morgan, according to their interests.

Please take notice, that in addition to above grounds, Julius N. Morgan excepts to said decree on the following grounds:

I. That his Honor erred in holding that he had been made, by proper process, a party to the action of John W. Morgan *v.* Linny N. Morgan *et al.*, and was, therefore,

bound by the proceeding therein; whereas he should have held that, at the time of the institution of such action, he was a minor of the age of thirteen years, and that he was not served with process in such action, nor was any guardian *ad litem* appointed to represent him; nor was any answer made for him by any one uuthorized or able to do so, and that, consequently, in any event, the debt of Jeremiah Glenn must be, as to him, presumed paid. And that his Honor erred in not so holding.

The defendant administrators of Glenn appeal upon the following exceptions:

I. Because it is respectfully submitted that his Honor, Judge Witherspoon, erred in holding that the debt of the estate of Jeremiah Glenn, deceased, against the estate of Nathaniel Morgan, deceased, is presumed paid by lapse of time as to the heirs at law of John W. Morgan.

II. Because his Honor erred in holding that said John W. Morgan, as heir at law, is entitled to one-fifth of the proceeds of the real estate mentioned in the complaint, after payment of certain costs and charges, and in ordering the same paid to him.

III. Because it is respectfully submitted that his Honor erred in not holding that when the petition *in re* and Judge Norton's order thereon were lodged in the sheriff's office for service, March 12th, 1888, the statute of limitations, as well as the presumption of payment from lapse of time, ceased to run in favor of John W. Morgan as well as the other parties interested, and that said lodgment being within twenty years from the date of the order in the equity cause confirming the report on claims, was in time as against the said John W. Morgan, as well as the other heirs at law.

IV. Because his Honor erred in not holding that the time from which the statute of limitations or the presumption of payment should be computed was the 5th day of January, 1871, the date of the last payment through the Court of Equity on the claim of Jeremiah Glenn.

V. Because John W. Morgan being absent from the State at the time of the lodgment of the petition and order *in re*, and continuing absent, the time of such absence cannot be deemed or taken as part of the time limited for the commencement of the proceedings, or to make out the presumption of payment, and his Honor erred in not so holding.

VI. Because his Honor erred in not holding that the order of injunction in the equity cause prevented the running of the statute of limitations and the presumption of payment from lapse of time.

VII. Because it is respectfully submitted that his Honor erred in not holding that from July 6th, 1868, the date when the order of injunction and to call in creditors, etc., in the creditors' bill was filed, Jeremiah Glenn and the other creditors of Nathaniel Morgan, deceased, had a lien upon the real and personal assets of the estate of said deceased, which lien was good against all the heirs at law and devisees of said Nathaniel Morgan, deceased, and was in full force and effect as to the land in question on March 12th, 1888, when the petition and order *in re* were lodged in the sheriff's office, and that this petition and order, being lodged within twenty years from said July 6th, 1868, were in time to prevent the presumption of payment from lapse of time as to John W. Morgan as well as the others, and that as to the lien there was no limitation.

*Messrs. Haynesworth & Parker*, for plaintiff and all defendants, except administrators of Glenn.

*Messrs. Cothran, Wells, Ansell & Cothran*, for administrators of Glenn.

Oct. 10, 1895. The opinion of the Court was delivered by

MR. JUSTICE POPE. Nathaniel Morgan, who died in the year 1863, while a citizen of Greenville, in this State, left in full force a will, whereof his son, the defendant, John W. Morgan, was appointed executor. By the terms of his will, amongst other things, a life estate was given his widow in

his property, together with certain specific legacies. The balance of his estate, real and personal, was devised and bequeathed to his six sons. At the time of his death, the testator was regarded as owning a considerable estate, consisting of negro slaves and land. The plaintiff, Julius N. Morgan, being a minor, the defendant, John W. Morgan, had, by proper proceedings therefor, himself appointed his general guardian by the Court of Equity in the year 1864. The calamities incident to the result of the war rendered the estate of the said Nathaniel Morgan, deceased, insolvent, so that on the 1st day of July, 1868, the defendant, John W. Morgan, as executor of his father's will, exhibited his bill in the Court of Equity for Greenville District (now county), against the widow and children of the said testator, and one Jeremiah Glenn, one of the largest creditors of said testator's estate, as defendants, alleging that the personal estate of his testator was largely insufficient for the payment of his debts, that the sale of his testator's land would be needed to aid in the payment of the testator's debts. Also setting out the provisions of the will of his testator in behalf of his widow and children; also stating that the testator's creditors were numerous, and had either sued or were preparing to sue upon their respective claims. He prayed in his bill that all said testator's creditors might be called on to present and prove their respective demands under the action he had instituted, and, in the meantime, might be restrained by the injunction of the Court, from bringing any suits against the complainant as such executor; that an account might be taken of his actings and doings as said executor, and for such other and further relief, &c. The service of the *subpœna ad respondendum* in said action in equity was duly accepted by every defendant who was of full age, and was thus accepted as to Julius N. Morgan, who was an infant: "Service accepted. Julius N. Morgan, by John W. Morgan, his guardian." Such words being endorsed on the original *sub. ad res.* On the 6th day of July, 1868, an order was passed in the cause, calling in creditors, enjoining

creditors from suing, and at the same time five commissioners were appointed to set off dower to the widow.   Writ in dower was duly issued August 5th, 1868, which was returned by the said commissioners on 5th September, 1868, setting apart to the widow as her dower 122 acres of land whereon was the family residence.   This return was confirmed by an order passed on the 22d January, 1869.   Of course, this estate of dower being in kind, was for her life.   All of the other real estate of testator was sold under an order therefor passed in the cause on the saleday of September, 1868.   The clerk of court, as successor to the commissioner in equity, made his report on claims on the 1st of September, 1869, among which was that of Jeremian Glenn by a sealed note, amounting at date of report, principal and interest, to the sum of $2,053.85.   This report of the clerk on claims was confirmed by an order made in the cause on the 6th December, 1870.   The funds arising from the sale of testator's land, and his personal estate in hands of the executor, were pro rated among creditors, and the last application of such funds to this purpose was on the 5th day of January, 1871, leaving as balance due on the claim of Jeremiah Glenn thereafter, $1,863.69, which balance was reported to the Court in that cause by the clerk.   The cause was marked "ended" on the equity docket on 6th December, 1870, and the action was dropped from such docket.   Jeremiah Glenn departed this life intestate a short time prior to March, 1888, and letters of administration upon his estate were duly granted to Abraham Cook and T. W. Glenn.   These administrators, fearing that the balance due the estate of their intestate by that of Nathaniel Morgan, deceased, might be considered or presumed as paid from lapse of time, filed their petition on the 1st day of March, 1888, in the Court of Common Pleas for Greenville County in the old case of Morgan *v.* Morgan *ot al.*, which last, as we before stated, was begun on 1st July, 1868.   This petition gave a history of the old suit in equity, showing the balance still due the estate of their intestate, asked the leave of the Court to en-

roll their decree and issue execution thereon, "and for such other and further relief as to the Court shall seem meet and proper." On the same day Judge Norton granted an order requiring the heirs at law of Nathaniel Morgan, deceased, to show cause on the first day of the next term of Court why the prayer of the petition should not be granted, and directed that copies of the petition and his order should be served upon each one of the said heirs at law. This petition and Judge Norton's order were filed in the office of the clerk of court for Greenville on the 9th day of March, 1888, and copies of the petition and order for each one of the said heirs at law were lodged with the sheriff of Greenville County on 12th of March, 1888, and served upon each one of them, except John W. Morgan, on the 27th day of April, 1888. John W. Morgan was a non-resident of this State, and was afterwards, to wit: on the        day of December, 1891, served by the usual publication. The heirs at law, except John W. Morgan, made answer to the petition and rule, denying the petitioners' right to the relief for which they prayed in their petition.

Pending the hearing of the petition and answers thereto, the widow of Nathaniel Morgan, deceased, departed this life in September, 1892, and some time after the death of the widow, but in the year 1892, the present plaintiff, Julius N. Morgan, began his action for the partition amongst the heirs at law of said Nathaniel Morgan, deceased, of the 122 acres of land, which had been assigned to the widow for life as dower, and to his action he made all such heirs at law parties, and also Abraham Cook and T. W. Glenn, as said administrators of the estate of Jeremiah Glenn, deceased, as claiming some lien on the land. The answers of all the defendants, except Abraham Cook and T. W. Glenn, as administrators, denied that Jeremiah Glenn in his lifetime had any lien by final decree or judgment upon said lands; that the said claim or judgment was paid by lapse of twenty years from its creation; that the *Ex parte* petition *in re* Morgan *v.* Morgan *et al.* of the defendants, Abraham Cook

and T. W. Glenn, as administrators, was inoperative, because the action of Morgan *v.* Morgan *et al.* had been ended in December, 1870, and could not then be revived after the lapse of more than twenty years, and because their administrators were not parties to that action, and because the claim of their intestate was no judgment. The plaintiff alleged that he had never been made a party to said action of Morgan *v.* Morgan *et al.*, and hence was not bound by any proceedings thereunder. The defendant, John W. Morgan, relied upon the fact that he had not been served with the petition and order of Judge Norton until December, 1891, and more than twenty years had elapsed since the date of the last payment (January, 1871,) on Jeremiah Glenn's debt against his testator and the service upon him of this petition and Judge Norton's order. All the issues were referred to Master Verner, and in his report he overruled the objection of plaintiff and defendants, and held that the defendants, Cook and Glenn, as administrators, had a judgment, capable of being revived, and for which the land in question should be sold to make payment. Exceptions to this report came on to be heard by Judge Witherspoon, and he held that the master was correct as to the children of Nathaniel Morgan holding the 122 acres of land subject to the payment of the debt of Jeremiah Glenn, except that the one-fifth share therein of John W. Morgan was not liable to sale for the payment of the Glenn debt, because he was not served with process until after twenty years had expired.

Both sides to the controversy appeal from this decree of Judge Witherspoon. Let the exceptions be reported.

Plaintiff's first exception relates to an inaccuracy of the Circuit Judge, in one part of his decree, as to the date on which the Circuit Judge, in Morgan *v.* Morgan *et al.*, confirmed the report on claims as on the 22d January, 1869. No doubt exists that this was a clerical error on the part of the Circuit Judge, for at least in three other places in his decree, he gives the exact date at which the

report on claims was confirmed, *December, 1870.* No possible harm could accrue to the appellants from this mistake as to the date, and we therefore overrule the exception upon the ground that this is not appealable error.

We will now consider the other exceptions by stating our conclusions and advancing the reasons for the same, and in this way we will more satisfactorily reach and dispose of the exceptions on each side, for an inspection of them will show that they are naturally grouped into a few general propositions by which they must all be governed. After a careful consideration of this case we have reached the conclusion:

1. That his Honor, the Circuit Judge, has erred in holding that plaintiff, Julius N. Morgan, is bound by the decree in Morgan *v.* Morgan *et al.,* for we hold that said Julius N. Morgan is entitled to his decree in this action for one-fifth part of the proceeds of this 122 acres of land when it is sold, less his share of the expenses of such sale and the actual costs of this case.

2. That his Honor, the Circuit Judge, has erred in holding that the defendant, John W. Morgan, is entitled to have paid to him one-fifth part of the proceeds arising from the sale of this land, freed from the claims of the administrators of Jeremiah Glenn, deceased.

3. That with the two foregoing modifications, the Circuit decree should be affirmed.

Having reached these conclusions, it is now our duty to set forth our reasons therefor, and in thus doing we will dispose of the exceptions here presented.

When Nathaniel Morgan died, his will provided that the fee in all his lands should vest in his six sons, of whom Julius N. Morgan was one. Of course, this devise was subject to the dower of his widow for life. These lands were also subject to the payment of testator's debts. This last, however, was subject to the condition, that the creditors of testator would subject this devise to the six sons to the payment of such debts under the rules of law. We see no evi-

dence in the "Case" that the share of Julius N. Morgan in the tract of land assigned to the widow for her dower, was ever legally made applicable to the payment of testator's debts—and here is one difficulty in brief. When the executor, John W. Morgan, filed his bill in the Court of Equity on 1st July, 1868, to sell all the lands of his testator to aid the personalty in payment of his testator's debts, he named Julius N. Morgan as one of the devisees of said land—Julius N., therefore, was before the Court as holding the title to this land. He was named as a defendant. But the record discloses the fact that said Julius N. was never served with any process by which the Court could get jurisdiction to divest him of his interest in these lands. It is true, John W. Morgan had been appointed his general guardian by the Court of Equity in 1864, and that John W. Morgan endorsed on the original *sub. ad res.* the acceptance of the service thereof by the said Julius N. Morgan, who was then an infant of thirteen years. This John W. Morgan was the plaintiff in that case; prayed to have his accounts as executor investigated, and, therefore, was in no condition to accept service for this infant. When the cases of *Bulow* v. *Witte*, 3 S. C., 308; *Walker* v. *Veno*, 6 S. C., 459; *Rollins* v. *Brown*, 37 S. C., 345, are referred to and carefully examined, it will be seen that no one of them sanctions any such doctrine as that contended for here. Granted that the Court of Equity regards itself as the protector of the rights of infants, and that in pursuance of such protectorship, such Court did, prior to 1870, in this State, sanction the appearance of the general guardian of an infant in a cause affecting the rights of the latter, yet we unhesitatingly affirm that no such appearance by such general guardian for his infant ward was ever sanctioned by a Court of Equity, when it was manifest in the pleadings that such general guardian had interests involved in the suit which antagonized those of his ward. If Julius N. Morgan was not a party to the action of Morgan v. Morgan *et al.*, then he has held his one-fifth interest in these lands for more than twenty

years, during which time no effort has been made by Jeremiah Glenn in his lifetime, nor his personal representatives since his death, to subject such interest in this tract of land to the payment of such debt. This being so, the Circuit Judge erred in holding otherwise, and the exception, one, presented by Julius N. Morgan for himself alone, must be sustained.

Now as to John W. Morgan. Why should he be exempted from the payment of this debt? It is said he was out of the State in April, 1888, when this petition of these administrators and the order of Judge Norton were served upon all the others, and while the sheriff had copies for him, he could not be found in the State. He was served by publication in 1891. He did not answer the petition; he, therefore, did not controvert the claims there asserted. When one is invited to speak and refuses to do so, while under no disabilities, who is clothed with authority to speak for him? So far as this record discloses, no one. It is contended here that such service was too late. We are inclined to agree with the administrators of Glenn in their construction of the provisions of our Code touching the commencement of service. It is there held that action is begun when process is lodged with the sheriff for service, *bona fide*, upon the defendant. This process was lodged in March, 1888, less than twenty years from the 6th December, 1870, when the report on claims was confirmed by the Court in Morgan *v.* Morgan *et al.*

In addition to this lodging with the sheriff, section 121 of the Code of this State seems to have pertinency here. This section is as follows: "If when the cause of action shall accrue against any person * * *; and if after such cause of action shall have accrued, such person shall depart from and reside out of the State, or remain continuously absent therefrom for the space of one year or more, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action." Under the views we shall announce hereafter, it

will be seen that this cause of action existed prior to the removal of John W. Morgan from this State, or, in other words, while he was a resident of this State; and inasmuch as his absence was beyond one year, it would seem this absence, under the section of the Code just quoted, would enure to the protection of the administrators against the said John W. Morgan.

It is contended, that notwithstanding all this may be true, yet the action of the Court of Equity from July, 1868, to 6th December, 1870, and the payment made on January, 1871, did not put this claim of Jeremiah Glenn in the shape of a judgment, and that even if it did, the proceeding adopted by the administrators on 1st March, 1888, and subsequently thereunder, was not a compliance with the law regulating the revival of judgment. It is unquestionably true that more than twenty years intervened between the dates, January, 1871, and 22d September, 1892; and this being so, if these administrators of Glenn cannot connect their proceeding, begun 1st March, 1888, with what is necessary under our law to revive a judgment, that of December, 1870, their claim is gone. Since *Woddrop* v. *Price*, 3 DeS., 203, decrees in equity in this State have ranked along with judgments at law. After *Blake* v. *Heyward*, Bail. Eq., 208, had been rendered, wherein some advance was made as to the effect of decrees in equity upon the rights of third persons, the legislature of this State, in 1840, see section 23 of the act entitled "An act to ascertain and define the powers, duties, and liabilities of masters, commissioners, and registers in equity," &c., vol. 11 of Statutes at Large, at pages 116 and 117, restricted the effect, *as to third persons*, without notice of decrees in equity, and required, in order that they should affect *third persons*, that they should be enrolled. It is very evident that this alteration did not extend to persons *who were parties to the action*. Prior to 1840, the Court of Appeals in this State had announced the doctrine, in *McCaw* v. *Blewitt*, Bail. Eq., 98, that a decree confirming a report of a master is conclusive as to every-

thing contained in the report upon the parties to the action, if no exceptions are taken thereto. Now in the case of Morgan v. Morgan et al., all the sons of Nathaniel Morgan, except Julius N. Morgan, acquiesced in the decree—no exceptions being taken. By this report of the master the sum due Glenn was ascertained in dollars and cents, and all the assets available at that time were ordered to be paid on this claim and others of similar dignity. After this application more than $1,800 still remained unpaid of Glenn's demand. We are at a loss to understand why this was not a decree for this sum. The land assigned to the dower could not be sold so as to interfere with that life estate. Under the practice which obtained in the Court of Equity, the parties might have obtained an order to sell the reversionary interests in these lands assigned to the widow, or they could wait until the dower estate fell in. It was optional with the parties.

It is claimed, however, that when the parties allowed the case of Morgan v. Morgan et al. to be marked "ended," and dropped from the docket, they lost their right to revive such decrees as had been pronounced therein. This is clearly a misapprehension. These parties could not restore this action to the calendar without notice to the other parties to the action, and an order therefor, nor could they obtain any administrative order from the Court without notice. The administrators of Glenn did not seek to do this. They acted fairly. As it is contended by these administrators, to accept the view of the Morgan appellants would be to deny the power of the Court to revive a judgment or decree within twenty years after its rendition, simply because it had been marked "ended" on the calendar, and dropped therefrom. A Court of Equity will and does always seek after substance rather than form, and we think these administrators have complied with the law—substantially, we mean. This Court has expressed itself on this subject in the cases of *Adams* v. *Richardson, Milling v. Wood, Leitner* v. *Metz,* all in the 32 S. C. Reports; also in

22—45

the more recent case of *Lawton* v. *Perry*, 40 S. C., 255; and we need not encumber this opinion with citations from these cases.    We think we have covered the exceptions by what we have announced already.    We agree with the Circuit Judge, except in the two matters where we have modified his judgment.

It is the judgment of this Court, that the judgment of the Circuit Court be modified as we have herein directed, and in all other matters it be affirmed.    The cause must be remanded to the Circuit Court to enforce our directions.